IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH KIM, | No. C 08-5565 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO AMEND, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS.** |
| v. | |
| INTERDENT, INC., a/k/a INTERDENT SERVICE CORPORATION, a/k/a GENTLE DENTAL, a/k/a MOUNTAIN VIEW DENTAL, a/k/a BLUE OAK DENTAL GROUP, a/k/a DEDICATED DENTAL, a/k/a AFFORDABLE DENTAL CARE, a/k/a CAPITAL DENTAL, and DOES 1-50, inclusive, | |
| Defendants. | |

On July 9, 2010, the Court heard oral argument on plaintiff's motion to file a second amended complaint, defendant's motion for summary judgment, and defendant's motion for Rule 11 sanctions. For the reasons set forth below, plaintiff's motion to amend the complaint is DENIED, defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and defendant's motion for Rule 11 sanctions is DENIED.

**BACKGROUND**

This is a wrongful death and negligence action brought by Sarah Kim, the surviving spouse of decedent Dr. Richard D. Bae ("Dr. Bae"), against InterDent, Inc. ("InterDent"). InterDent contracts with dentists to provide managerial and administrative services to their dental practice groups, and is one of the largest providers of such services in the United States. Beginning in September 2005, Dr. Bae, an oral surgeon, worked as an independent contractor and performed oral surgeries in dental offices

that were managed by InterDent.

Although the complaint alleges Dr. Bae was an independent contractor for InterDent, the contracts produced in discovery show that Dr. Bae was actually an independent contractor for Tancio Dental Corporation and Nakaki Dental Corporation (the professional corporations or "PCs"), and with Bright Now and Dr. Francis Chung.[1] *See* Decl. of Powers in Supp. of Def.'s Opp'n to Pl.'s Mot. to Amend FAC ("Powers Opp'n Amend Decl."), Ex. A, B (contracts showing independent contractor relationship); Decl. Powers in Supp. of Def.'s Summ. J. ("Powers Decl. MSJ"), Ex. D, N. Under separate management agreements, InterDent contracted with the PCs to provide management and administrative services for the PCs. *See* Powers Decl. MSJ, Ex. R (Group Management Agreement between Gentle Dental and Nakaki Dental Corporation); Hertzig Decl., Ex. 3 (Group Management Agreement between Gentle Dental and Tancio Dental Corporation).

The group management agreements between InterDent and the PCs state, *inter alia*, that the "[PC] hereby appoints [InterDent] as its sole and exclusive Manager for the operation of the Practice," the "[PC] shall retain ultimate responsibility for all activities of [PCs] that are within the scope of a dentist's licensure and cannot be performed by [InterDent] due to [InterDent's] non-licensed status." Powers Decl. MSJ, Ex. R, §§ 3.1, 3.2; *see also id*. at Article IV, "Management Services" (setting forth the various services that InterDent will provide to the PCs). Section 3.3 of both agreements sets forth the relationship between the parties:

> [I]t is understood and agreed that [InterDent] shall, at all times, be acting and performing as an independent contractor and not as an employee of [PCs]. Except as provided in this Agreement or as required by law, *[PCs] shall neither have nor exercise any control or direction over the methods by which [InterDent] shall perform its obligations hereunder; nor shall [InterDent] have or exercise any control or direction over the methods by which [PCs] shall practice dentistry.* It is expressly agreed by the parties that no work, act, commission or omission of [InterDent] pursuant to the terms and conditions of this Agreement shall be construed to make or render [InterDent] or [InterDent's] employees or agents, the employees of [PCs]. *[InterDent] and [PCs] are not partners or joint venturers with each other and nothing herein shall be construed so as to make them partners or joint venturers or impose upon either of them any liability as partners or joint venturers.* [InterDent's] responsibility is to assure that the services covered by this Agreement shall be performed and rendered in a competent, efficient and

---

[1] InterDent's summary judgment papers state that Bright Now and Dr. Francis Chung are third parties that are not affiliated with InterDent. Although not at issue in the present motions, the parties dispute whether Dr. Bae could have obtained the Fentanyl that led to his overdose from Bright Now or Dr. Chung.

> satisfactory manner. Both [InterDent] and [PCs] will act in good faith in connection with the performance of their respective obligations under this Agreement.

*Id.* at §3.3 (emphasis added). Pursuant to those agreements, InterDent assumed responsibility for the day-to-day management of the dental offices, and, *inter alia*, hired the office staff, including the dental and surgical assistants; administered payroll; maintained patient records; set productivity goals for the dentists; and provided the equipment and supplies.

Dr. Bae performed oral surgeries pursuant to his independent contractor agreements with the Tancio Dental Corporation at the Fremont Gentle Dental office, and with the Nakaki Dental Corporation at several offices, including the Stockton Gentle Dental office.[2] Dr. Bae's duties as an oral surgeon required access to and administration of controlled substances such as Fentanyl. InterDent staff at the Fremont and Stockton offices ordered, paid for, stored, and supplied Dr. Bae with the Fentanyl that he used in his practice. Although Dr. Bae was performing surgeries at other InterDent/Gentle Dental offices other than Fremont and Stockton, no controlled substances were stored at those other offices for him to use in procedures, and Dr. Bae brought controlled substances with him in his car when he traveled from one office to the other.[3]

InterDent ordered the Fentanyl using the Drug Enforcement Administration registration number of Dr. Bae or another registered dentist; InterDent itself does not hold a DEA license. Plaintiff has submitted evidence suggesting that InterDent did not have any policies or practices to monitor or track the controlled substances used at the dental offices, and no one at these offices, or within InterDent, was monitoring or otherwise keeping track of how the Fentanyl was being used.[4] Dr. Bae maintained a drug log, but no one at InterDent checked his drug log for accuracy. Plaintiff has also submitted evidence

---

[2] According to InterDent, "Gentle Dental" is the service mark of InterDent.

[3] Plaintiff cited the testimony of Michael Bazan and Dr. Tancio for this fact. Mr. Bazan testified that he worked with Dr. Bae at other Interdent offices, that those other offices did not store controlled substances, and that Dr. Bae brought controlled substances with him when he worked at those offices. Dr. Tancio also testified that Dr. Bae brought controlled substances with him when he worked. The Court OVERRULES defendant's objection to this evidence.

[4] InterDent objects that plaintiff's evidence does not establish that InterDent did not have any written policies regarding handling, storing or tracking controlled substances, but rather the InterDent witnesses testified that they were not aware of any such policies. Defendant's objection does not go to the admissibility of the evidence, but rather to its characterization.

3

showing that Dr. Bae was frustrated with what he perceived to be an inefficient and decentralized ordering process, and he emailed InterDent staff requesting that InterDent centralize the process for ordering controlled substances and other surgical supplies.

Plaintiff alleges that on or about July 2006, Dr. Bae began to use Fentanyl obtained from InterDent in order to cope with his workload. InterDent has submitted evidence showing that Dr. Bae had a long history of alcohol and drug use, and that plaintiff was aware of Dr. Bae's addiction problems. Dr. Bae sought outpatient drug counseling, and neither Dr. Bae nor plaintiff ever informed InterDent about Dr. Bae's drug addiction. On December 13, 2006, Dr. Bae overdosed on Fentanyl and collapsed on the bathroom floor of the Stockton dental office. Paramedics were able to restore Dr. Bae's breathing, but he lapsed into a coma and never regained consciousness. On February 22, 2007, Dr. Bae's feeding tube was removed, and he died on April 16, 2007 at the age of 37.

## LEGAL STANDARDS

### I. Leave to Amend

Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It states that if a responsive pleading has already been filed, the party seeking amendment "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be generous in granting leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

However, there are several accepted reasons to deny leave to amend, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the plaintiff has previously amended the complaint. *See Ascon Properties*, 866 F.2d at 1160; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988). Courts do not ordinarily consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, but leave may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United*

4

*States*, 928 F.2d 829, 843 (9th Cir. 1991).

## II. Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III. Rule 11 Sanctions

Under Federal Rule of Civil Procedure 11, a court may impose sanctions against an attorney, law firm, or party when a complaint is filed for an improper purpose such as harassment or delay, when the

claims in the complaint are unwarranted under with existing law or a nonfrivolous argument for extension of the law, or when the allegations in the complaint are without evidentiary support and unlikely to have evidentiary support after further investigation and discovery. Fed. R. Civ. P. 11(b) & (c). When evaluating whether a complaint is frivolous or without evidentiary support, the court "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

### I. Plaintiff's motion to amend the complaint

Plaintiff seeks to amend the complaint in the following ways: (1) to substitute in a number of defendants in place of the "Doe" defendants; (2) to strike her claim for loss of consortium; (3) to clarify that the second cause of action for negligence is being pleaded by plaintiff as successor in interest to Dr. Bae; and (4) to add a fourth cause of action for negligence pleaded on plaintiff's behalf.

With regard to the Doe substitutions, plaintiff seeks to substitute the defendants as follows: (1) InterDent Service Corporation in place of Doe 1; (2) Michael S. Tancio, D.M.D. for Doe 2; (3) Tancio Dental Corporation for Doe 3; (4) Robert Nakaki, D.D.S. for Doe 4; (5) Nakaki Dental Corporation for Doe 5; (6) P. Nakaki Dental Corporation for Doe 6; and (7) Nakaki and Stromberg Dental Corporation for Doe 7. Plaintiff claims that the relationships among InterDent and the dentists and dental corporations that contract with InterDent were not clarified until depositions were taken in April 2010, and that "Plaintiff has always believed that Dr. Bae was an independent contractor for InterDent." Motion at 5:4. According to plaintiff, discovery has now revealed that Dr. Bae was an independent contractor for Tancio Dental Corporation and Nakaki Dental Corporation, and that Dr. Bae did not have a contractual relationship with InterDent. InterDent's 30(b)(6) witness also explained the relationship between InterDent, Inc. and InterDent Service Corporation, revealing that InterDent Inc. holds the stock for InterDent Service Corporation and InterDent Service Corporation provides all the services. The witness also stated that Gentle Dental is a service mark that InterDent permits the dental offices with

6

which it contracts to use.

InterDent contends that plaintiff has unreasonably delayed in seeking to amend the complaint, and that plaintiff has possessed the information about the relationships between Dr. Bae, InterDent, the dentists and the PCs long before the April 2010 depositions. InterDent states that plaintiff herself produced Dr. Bae's independent contractor agreements to InterDent, including a Specialist Independent Contractor Agreement between Nakaki Dental Corporation and Dr. Bae and a Specialist Independent Contractor Agreement between Tancio Dental Corporation and Dr. Bae. In addition, when InterDent moved to dismiss the original complaint in January 2009, InterDent's motion set forth its explanation of the business relationships between Dr. Bae, the dentists and the PCs, and InterDent, and attached to that motion the management agreement between Gentle Dental Management, Inc. and Tancio Dental Corporation and the employment agreement between Tancio Dental Corporation and Dr. Bae. *See* Def's Motion to Dismiss at 4:17-6:2, Hertzig Decl. Ex. 3, 4. InterDent also notes that when InterDent made its initial disclosures on July 7, 2009, InterDent identified Dr. Nakaki and Dr. Tancio as witnesses with information about this case. In its initial disclosures, InterDent also provided: a management agreement between Gentle Dental Management, Inc. and the Nakaki Dental Corporation; a management agreement between Gentle Dental Management, Inc. and Tancio Dental Corporation; a service provider agreement between Dr. Bae and Tancio Dental Corporation; an employment agreement between Dr. Bae and Tancio Dental Corporation; and the articles of incorporation for Tancio Dental Corporation. Powers Decl. ¶¶ 2-7, Ex. A-F.

The Court finds that plaintiff has unduly delayed in seeking to substitute the Doe defendants. As InterDent has demonstrated, plaintiff has long possessed the documents and information setting forth the business relationships between Dr. Bae, the dentists and dental corporations, and InterDent. Plaintiff makes much of the fact that discovery was stayed until November 16, 2009 while the pleadings were being resolved. However, plaintiff has had copies of the various contracts since well before November 2009. Moreover, while the April 2010 depositions may have provided more detail regarding how the dental offices were run and the precise nature of the relationships at issue, plaintiff has not explained how the information gleaned from the depositions provided, for the first time, the basis for holding the proposed defendants liable. However, because delay alone is not a basis for denying leave to amend,

7

the Court must also determine whether amendment would be prejudicial and/or futile. *See Owens v. Kaiser Foundation Health Plan Inc.*, 244 F.3d 708, 712-713 (9th Cir. 2001) ("Assuming arguendo that Kaiser had unreasonably delayed the filing of the motion to amend its answer, undue delay by itself is insufficient to justify denying a motion to amend.") (internal citation and quotations omitted).

InterDent contends that the proposed amendments are futile because the proposed second amended complaint is subject to a Rule 12(b)(6) motion for failure to allege sufficient facts against any of the additional parties. The Court agrees. The proposed second amended complaint does not contain any factual allegations indicating how each of the new defendants is liable for Dr. Bae's death. The first amended complaint is alleged against "defendants, InterDent, Inc., a Delaware corporation, a/k/a InterDent Service Corporation, a/k/a Gentle Dental, a/k/a Mountain View Dental, a/k/a Blue Oak Dental Group, a/k/a Dedicated Dental, a/k/a Affordable Dental Care, a/k/a Capital Dental (collectively 'InterDent')." FAC ¶ 4. The proposed second amended complaint contains the identical allegation, SAC ¶ 3, and contains a new paragraph substituting InterDent Service Corporation for Doe 1. There are no additional allegations in the proposed SAC regarding InterDent Service Corporation, and indeed the proposed SAC continues to refer to the collective "InterDent." Similarly, aside from substituting in the other new defendants for the Doe defendants, SAC ¶¶ 8-13, the proposed SAC does not contain any factual allegations regarding Michael S. Tancio, Tancio Dental Corporation, Robert P. Nakaki, Nakaki Dental Corporation, Robert P. Nakaki Dental Corporation, or Nakaki and Stromberg Dental Corporation. Indeed, remarkably the proposed SAC continues to allege that "Dr. Bae performed services as an independent contractor for InterDent as an oral surgeon," *id*. ¶ 14, and there are no allegations in the proposed SAC about the nature of the business relationships between Dr. Bae, InterDent, the dentists, and the dental corporations. Although the claims in the proposed SAC are alleged against all defendants, the allegations under each cause of action relate solely to "InterDent," and indeed appear to be identical or virtually identical to the allegations contained in the FAC.

In addition, the Court finds that the proposed amendments would be prejudicial to the added defendants, and to InterDent. Adding the new defendants would cause significant delay because the new defendants would engage in motion practice and be entitled to take discovery. Fact discovery

closed on May 12, 2010, and thus discovery would need to be reopened.[5] This litigation is substantially complete, and the Court will set a new trial date at the August 4, 2010 telephone conference.[6] Although plaintiff asserts that the delay in the trial mitigates whatever delay would be caused by amending the complaint, the Court disagrees, as adding the new defendants would substantially delay the resolution of this case, whereas the Court anticipates that this case can proceed to trial in the near future.

In addition, InterDent would be prejudiced if plaintiff is allowed to add a fourth cause of action for negligence to plaintiff directly. Plaintiff argues that InterDent has already conducted discovery relevant to this cause of action during the course of litigating this case, and therefore will not be prejudiced. For example, plaintiff claims that "[InterDent] treated plaintiff's claim for negligence as being made on her behalf and not just as the successor in interest to Dr. Bae," when they inquired about plaintiff's emotional distress. Reply to Defs. Opp'n to Mot. to Amend, 3:9-16. However, InterDent asserts that it would be required to conduct discovery and litigation over the question of what duty, if any, InterDent owed to plaintiff, as opposed to Dr. Bae. Consistent with the Ninth Circuit, "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998). Accordingly, the Court DENIES plaintiff's motion for leave to amend the complaint.

## II. Defendant's motion for summary judgment

### A. Wrongful death and negligence claims

InterDent has moved for summary judgment on plaintiff's wrongful death and negligence claims. Wrongful death is a cause of action created by statute for "pecuniary loss brought by heirs against a person who causes the death or another by a wrongful act or neglect." *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 114 (1992). Wrongful death requires "all the traditional elements of

---

[5] The parties have submitted a number of discovery disputes to the Court for resolution. The Court will issue a separate order addressing those disputes.

[6] The August 23, 2010 trial date was vacated due to a conflict in defense counsel's trial schedule.

9

1 negligence, i.e., duty, breach of duty, causation, and damage." *Id*. at 113. InterDent contends that it is
2 entitled to summary judgment on the wrongful death and negligence claims because InterDent did not
3 owe a legal duty to Dr. Bae. InterDent advances two arguments. First, InterDent contends that it did
4 not owe a duty to Dr. Bae because there was no special relationship between InterDent and Dr. Bae.
5 Second, InterDent contends it did not owe a duty to Dr. Bae because, even assuming InterDent supplied
6 the Fentanyl, InterDent did not know or have reason to know that Dr. Bae was abusing the Fentanyl.

### 1. Special relationship

InterDent contends that there was no special relationship between InterDent and Dr. Bae because Dr. Bae was neither an employee nor an independent contractor of InterDent. InterDent argues that the evidence shows that at the time of his death, Dr. Bae was an independent contractor of Tancio Dental Corporation and Nakaki Dental Corporation, as per the Service Provider Agreements between Dr. Bae and the dental corporations. InterDent also argues that the evidence shows that InterDent did not have any control over Dr. Bae's work or his schedule. *See* Powers Decl. MSJ, Ex. M (Wallace Depo., 142:4-18)("InterDent does nothing with the dentists. There's that line. It's clinical. So we don't tell the dentists to do anything"). The management agreements between InterDent and the dental corporations state that InterDent shall not "exercise any control or direction over the methods by which [PCs] shall practice dentistry." *See* Powers Decl. MSJ, Ex. R; Hertzig Decl., Ex. 3. Further, the independent contractor agreements between Dr. Bae and the PCs state that the "[PCs] shall have no right to and shall not control the manner or prescribe the method by which the Specialist Services are provided by [Dr. Bae]." *See* Powers Opp'n Amend Decl. Ex. A, B. Moreover, contrary to plaintiff's argument that InterDent paid the dentists, InterDent merely handled the payroll services. *See* Powers Decl. MSJ, Ex. F (Tancio Depo., 54: 16-19). The Court agrees with InterDent that the undisputed evidence shows that Dr. Bae was neither an employee nor an independent contractor of InterDent.

In opposition to InterDent's motion for summary judgment, plaintiff acknowledges that Dr. Bae was an independent contractor for Tancio Dental Corporation and Nakaki Dental Corporation. However, plaintiff argues that InterDent nevertheless owed a duty to Dr. Bae because "InterDent undertook to render services for consideration that were necessary for the protection of Dr. Bae and

10

other professionals in its offices." Opp'n at13:24-25. Plaintiff argues that because InterDent "had undertaken to provide management services for all the management functions of the offices, including its narcotics distribution," InterDent owed a duty to Dr. Bae. Plaintiff relies on Sections 323 and 324 of the Restatement (Second) of Torts, which relate to the rendering of services for the protection of another, or to a third party. Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. Section 324A parallels Section 323 and applies when a third party is involved. Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A. The rule embodied in Sections 323 and 324 is known as the "negligent undertaking doctrine," or the "Good Samaritan rule." *See Mukthar v. Latin American Sec. Serv.*, 139 Cal. App. 4th 284, 289 (2006); *see also Delgado v. Trax Bar & Grill*, 36 Cal.4th 224, 249, (2005) ("Our cases establish that a volunteer who, having no initial duty to do so, undertakes to provide protective services to another, will be found to have a duty to exercise due care in the performance of that undertaking if one of two conditions is met: either (a) the volunteer's failure to exercise such care increases the risk of harm to the other person, or (b) the other person reasonably relies upon the volunteer's undertaking and suffers injury as a result.").

Plaintiff emphasizes the fact that InterDent ordered, paid for, and provided the Fentanyl to Dr.

11

Bae. Plaintiff has submitted the declaration of Steven B. Kupferman, DMD, MD.[7] Dr. Kupferman states,

> Although Dr. Bae was an independent contractor, InterDent had assumed the responsibility to order, pay for, and receive narcotics for Dr. Bae, as well as manage the offices where Dr. Bae provided services, including providing surgical assistants, office staff, and records maintenance. InterDent had no provisions in place to prevent its independent contractors or employees from diverting narcotics.
>
> Throughout his time at InterDent, Dr. Bae had given a substantial amount of his income to InterDent for their provision of administrative services. This would have included such responsibilities as ordering, procuring and logging of narcotic medications. InterDent did not properly keep track of the narcotic medications that they were ordering on a regular basis which would have alerted them to any employee or independent contractor diverting the narcotics. . . .
>
> Itinerant oral surgery as practiced in California is required to abide by the standards of care within the private practice community. The standard of care in the private practice sector is to have an assistant or a manager in the office keep a log of the narcotics that are ordered and used. Dr. Bae was contributing a significant amount of his earned income to InterDent in what appeared to be a fifty-fifty split, such that InterDent was responsible for the administrative aspect of his practice. InterDent failed to maintain the administrative standards as would occur in the private practice sector. Therefore, it is my opinion that InterDent bears responsibility for not properly abiding by the standards of care for the administrative aspects of the practice of oral surgery.

Kupferman Decl. ¶¶ 3-5.

Plaintiff has also attached the declaration of Alfred Hurt, Jr., D.Pharm., a pharmacist registered with the California State Board of Pharmacy, who states that "Facilities that order and store controlled substances must maintain practices and procedures regarding the control of such substances to prevent and detect diversion of such substances." This is required because "Fentanyl has a high potential for

---

[7] InterDent objects to Dr. Kupferman's declaration on the ground that plaintiff did not attach sworn or certified copies of the documents relied upon by Dr. Kupferman in making his declaration. Rule 56(e)(1) provides that "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1). Courts have held that "[i]f documentary evidence is cited as a source of a factual contention, Rule 56(e) requires attachment." *School Dist. No. IJ, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Here, Dr. Kupferman's declaration did not refer to any specific document for a factual contention, but rather he simply stated that he had reviewed various documents in this case in order to form his expert opinion. InterDent also objects that Dr. Kupferman's declaration is conclusory and lacks foundation. The Court finds that defendant's objections go to weight and not admissibility, and the objection is OVERRULED.

abuse" and Fentanyl's "potential for abuse is well known in the medical profession." Hurt Decl. ¶¶ 2-4.[8]

Plaintiff has submitted evidence showing that InterDent ordered, paid for, stored, and supplied the narcotics to Dr. Bae; that InterDent did not have any policies or practices to monitor and control the narcotics that it supplied to Dr. Bae; that Dr. Bae repeatedly emailed InterDent staff about the ordering, administration and general procedures regarding controlled substances in the offices where he worked and asked InterDent staff to centralize the ordering process; and that no one from InterDent ever reviewed Dr. Bae's drug logs for accuracy. Plaintiff asserts that if InterDent had been tracking the Fentanyl it supplied to Dr. Bae, InterDent would have discovered Dr. Bae's diversion of the Fentanyl. In addition, plaintiff has submitted evidence suggesting that other dental offices have policies in place to verify the accuracy of the drug logs maintained by the dentists.

InterDent argues that the negligent undertaking doctrine is inapplicable because InterDent did not render services for the protection of Dr. Bae. Although InterDent admits that it acted as a purchasing agent for the narcotics Dr. Bae used in his practice, it disclaims any responsibility for the necessary safety and tracking procedures to be followed when dealing with controlled substances because the management agreements between InterDent and the dental corporations are silent on the point. However, in the agreements InterDent specifically did undertake day-to-day management of the dental offices and procurement of the narcotics necessary to those practices, and plaintiff's expert asserts that management responsibilities include "logging of narcotic medications" and having "an assistant or a manager in the office keep a log of the narcotics that are ordered and used." Further, plaintiff submits evidence that the narcotic Fentanyl "has a high potential for abuse," which is "well known in the medical profession." As such, it becomes a question of fact whether InterDent's management responsibilities amounted to an undertaking "to render services . . . necessary for the protection" of its collaborating dentists or their clients.

Although the question is a close one, the Court finds that there is sufficient evidence in the record to prevent summary judgment on this issue.

---

[8] InterDent objects to Dr. Hurt's declaration to the extent that it evaluates specific documents from discovery in this case. The Court does not use those sections of the declaration for these purposes and accordingly need not rule on that objection.

### 2. Know or reason to know of drug abuse

InterDent also contends that even assuming it supplied the Fentanyl that Dr. Bae took when he overdosed, InterDent did not owe a duty to Dr. Bae because there is no evidence that InterDent knew or had reason to know that Dr. Bae was abusing Fentanyl. Cases involving the provision of dangerous instrumentalities such as cars and firearms hold that "a person owes a duty of care not to provide a dangerous instrumentality to an individual whose use of the instrumentality the supplier knows, or has reason to know, will result in injury." *Jacoves*, 9 Cal. App. 4th at 116.

InterDent has submitted deposition testimony from the employees and dentists who worked with Dr. Bae, and every such witness testified that he or she did not know that Dr. Bae was using narcotics. These witnesses also testified that they did not see "track marks" on Dr. Bae's arms, and that they did not observe any aberrant behavior that would have led them to believe Dr. Bae was using drugs. In addition, plaintiff conceded that she and Dr. Bae actively hid Dr. Bae's addiction from everyone except Dr. Bae's treating physicians. At her deposition, plaintiff testified that Dr. Bae never told anyone at the Dental Board about his drug dependency problems for fear of losing his license. Plaintiff also testified that she never told anyone at InterDent about Dr. Bae's drug use.

Plaintiff argues that there at least a triable issue of fact as to whether InterDent knew or should have known about Dr. Bae's drug use. Plaintiff cites, *inter alia*, her own testimony that she saw multiple, obvious track marks on both of Dr. Bae's arms, the fact that Dr. Bae wore short-sleeved scrub shirts at the office, and testimony by Dr. Bae's surgical assistant, Mike Bazan, that he once saw bruises on Dr. Bae's arm, but upon inquiry, Dr. Bae explained that he had been dehydrated and gave himself IV fluids over the weekend. Plaintiff has also submitted evidence showing that in the months leading up to his overdose, Dr. Bae lost weight and appeared unwell.

Again, although it is a very close call, the Court finds that on this record summary judgment is not appropriate. A jury could believe plaintiff's testimony that the track marks on Dr. Bae's arms were obvious and visible, and could disbelieve the testimony of InterDent staff that they did not see any such marks. Dr. Bae wore short-sleeved scrubs, and thus if plaintiff's testimony is credited, InterDent staff should have seen the marks on his arms. A jury could believe that Mr. Bazan saw the bruising, but that Dr. Bae's explanation was not credible and thus that Mr. Bazan knew or should have known that Dr.

Bae was abusing drugs, particularly when Dr. Bae had unfettered access to Fentanyl.

### B. Negligence per se

Plaintiff also alleges a claim for negligence per se. The negligence per se doctrine is codified in Evidence Code Section 669, which provides:

> The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669; *see also Galvez v. Frields*, 88 Cal. App. 4th 1410, 1419 (2001). Plaintiff alleges that InterDent violated the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*. The regulations implementing the CSA provide:

> Every person who manufactures, distributes, dispenses, imports, or exports any controlled substance or who proposes to engage in the manufacture, distribution, dispensing, importation or exportation of any controlled substance shall obtain a registration unless exempted by law or pursuant to §§ 1301.22 through 1301.26 . . . [o]nly persons actually engaged in such activities are required to obtain a registration; related or affiliated persons who are not engaged in such activities are not required to be registered.

21 C.F.R. § 1301.11(a). "Person" includes "any individual, corporation, . . . business trust, partnership, association, or other legal entity." 21 C.F.R. § 1300.01(b)(34). Persons who are registered must provide effective controls and procedures to guard against theft and diversion of controlled substances. 21 U.S.C. § 823(a)(1). Plaintiff alleges that InterDent was required to be registered under the CSA, that InterDent failed to provide effective controls and procedures, and that Dr. Bae was a member of the class of people whom the regulations were designed to protect.

InterDent moves for summary judgment on the ground that InterDent is not subject to the registration requirement of the CSA because it did not "dispense" or "distribute" controlled substances. The definition of the term "dispenser" is "an individual practitioner, institutional practitioner, pharmacy or pharmacist who dispenses a controlled substance." 21 C.F.R. § 1300.01(b)(11). An "individual practitioner" is defined as "a physician, dentist, veterinarian, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he/she practices, to dispense a

15

controlled substance in the course of professional practice, but does not include a pharmacist, a pharmacy, or an institutional practitioner." 21 C.F.R. § 1300.01(b)(17). Additionally, an "institutional practitioner" is defined as a licensed or registered hospital. 21 C.F.R. § 1300.01(b)(18). InterDent argues that it does not fit any of these definitions because it simply provides administrative support services for the PCs. *See* Powers Decl. MSJ, Ex. R (Group Management Agreement between Gentle Dental and Nakaki Dental Corporation); Hertzig Decl., Ex. 3 (Group Management Agreement between Gentle Dental and Tancio Dental Corporation).

Plaintiff contends that InterDent is an institutional practitioner because it dispensed and/or distributed controlled substances. To support this argument, plaintiff argues that InterDent's surgical assistants "would obtain narcotics . . . from InterDent's boxes or cabinets and provide them to Dr. Bae for use in his procedure on patients." Pl.'s Opp'n to Df.'s Mot. Summ. J., 20:17-19. However, "dispense" is defined as delivering "a controlled substances to an *ultimate user*." 21 U.S.C. § 802(10)(emphasis added). An ultimate user "means a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household or for an animal owned by him or by a member of his household." 21 U.S.C. § 802(27). Consistent with these definitions, InterDent did not dispense controlled substances. Rather, Dr. Bae, as the registered oral surgeon, "dispensed" controlled substances to the "ultimate users," his patients.

The CSA states "'distribute' means to deliver (other than by administering[9] or dispensing) a controlled substance or a listed chemical. The term 'distributor' means a person who so delivers a controlled substance or a listed chemical." 21 U.S.C. § 802(11). "Deliver," in turn, is defined as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Here, InterDent employees placed orders and paid for controlled substances on behalf of Dr. Bae and other registered dentists, for use in the dental practice. However, the registration requirement is waived "for any agent or employee of a person who

---

[9] According to the CSA, "[t]he term 'administer' refers to the direct application of a controlled substance to the body of a patient or research subject by–
(A) a practitioner (or, in his presence, by his authorized agent), or
(B) the patient or research subject at the direction and in the presence of the practitioner,
whether such application be by injection, inhalation, ingestion or any other means." 21 U.S.C. § 802(2).

16

is registered to engage in any group of independent activities, if such agent or employee is acting in the usual course of his/her business or employment." 21C.F.R. § 1301.22(a). Under the dental group management agreement between InterDent and the PCs, InterDent "serve[s] as the purchasing agent for [PCs]" and does not possess dental licenses or certificates. *See* Powers Decl. MSJ, Ex. R; Hertzig Decl., Ex. 3. Thus, pursuant to the terms of the management agreements and 20 C.F.R. § 1301.22(a), InterDent is exempt from the registration requirement because its employee acted as purchasing agents for the dentists.

Plaintiff relies on *United States v. Stidham*, 938 F. Supp. 808 (S.D. Ala. 1996), to argue that InterDent is subject to the CSA registration requirement. In *Stidham*, the defendant owned the Gulf Coast Drug Control Center, which obtained a DEA registration in order to operate a methadone treatment clinic. There was a factual dispute as to whether the defendant owned the Gulf Coast Drug Control Center either solely, or in partnership with a doctor. The methadone clinic failed to maintain a dispensing log and other records required of a DEA registrant. The defendant claimed that he was not liable because he believed that the actual registrant was the doctor, who had signed the registration application. The court rejected that argument. "The application, however, was signed on behalf of the Gulf Coast Drug Control Center, which was the entity operating a narcotic treatment center. Moreover, there is nothing in the Act or the regulations that makes the registration requirement applicable solely to medical personnel. To the contrary, the regulations require that all persons involved in the manufacture, distribution and dispensing of controlled substances be registered, 21 C.F.R. § 1301.21, and defines persons to include 'any individual corporation, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity.' 21 C.F.R. § 1301.02." *Id.* at 814. *Stidham* is inapposite because there it was undisputed that the clinic was dispensing methadone and subject to the registration requirements.

Defendant's motion for summary adjudication of the claim for negligence per se is GRANTED.

### C. Unclean hands

InterDent moves for summary judgment on its affirmative defense of unclean hands. InterDent argues that plaintiff's claims are barred by unclean hands because Dr. Bae illegally diverted the

17

Fentanyl, and plaintiff knew about Dr. Bae's drug addiction and yet never informed InterDent or any other third party (except therapists) about his drug problems. InterDent has submitted, *inter alia*, deposition testimony by Karen Weinberger, Dr. Bae's therapist, in which Ms. Weinberger stated that plaintiff was "babysitting" Dr. Bae and accompanying him to work every day to make sure Dr. Bae would not use drugs.[10] InterDent argues that by failing to report her husband's drug addiction to the California Dental Board, the dental corporations, InterDent, or any third party who could have intervened, plaintiff ensured that Dr. Bae maintained his access to Fentanyl.

Plaintiff contends that there are numerous questions of fact that preclude summary judgment on this affirmative defense. In addition, plaintiff argues that InterDent cannot invoke unclean hands because it violated the Controlled Substances Act and because it would violate public policy. As discussed *supra*, the Court finds that InterDent has not violated the Controlled Substances Act, and thus the CSA is not a bar to InterDent's unclean hands defense. None of the cases cited by plaintiff demonstrate why, as a matter of public policy, InterDent should be precluded from asserting an unclean hands defense here.

The Court finds that on this record, the Court cannot grant summary judgment on InterDent's unclean hands defense. There are numerous factual questions implicated by the unclean hands defense, and those questions cannot be resolved on summary judgment. *See Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392, 407 (1992) (reversing summary judgment and explaining that "as a general rule, application of the unclean hands doctrine remains primarily a question of fact."). Plaintiff requests that the Court bifurcate the unclean hands defense and hold a separate court trial on the matter, while InterDent asserts that because the facts surrounding the unclean hands defense are intertwined with the legal claims, the defense should be tried to the jury. The Court will address this matter at the pretrial conference.

### III. Rule 11 Sanctions

InterDent seeks Rule 11 sanctions against plaintiff and her counsel on the ground that plaintiff

---

[10] Ms. Weinberger's deposition was taken after InterDent's reply brief was filed, and thus this evidence was first submitted in InterDent's post-hearing supplemental briefing on unclean hands.

failed to conduct a reasonable investigation into the facts before filing this case. InterDent seeks three forms of sanctions: an order requiring plaintiff to withdraw her complaint and FAC with prejudice, an award of attorney's fees incurred in this action, and an order that all outstanding costs to be paid to InterDent in the underlying action be paid immediately, with interest. Plaintiff contends that InterDent's Rule 11 motion is baseless and requests that the Court grant plaintiff her attorney's fees in opposing this motion, in the amount of $8, 670.

The Court finds that Rule 11 sanctions are not warranted. The parties' arguments on the sanctions motion largely mirror those made on summary judgment. Although the Court has granted partial summary judgment in favor of InterDent, the Court does not find that plaintiff's unsuccessful claims were frivolous or brought for an improper purpose. The Court DENIES InterDent's motion, and DENIES plaintiff's request for fees.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to amend, GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment, and DENIES defendant's motion for Rule 11 sanctions. (Docket Nos. 79, 99, 103). The Court SUSTAINS plaintiff's objection to InterDent's citation to an unpublished California Court of Appeal opinion. (Docket No. 155). Except as addressed in this order, the Court does not rule on the parties' evidentiary objections because this order does not rely on the evidence at issue.

**IT IS SO ORDERED.**

Dated: August 3, 2010

SUSAN ILLSTON
United States District Judge